NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3176


JACENTA J. GRIFFIN,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.


Sarah J. Martoccia, Law Offices of Sarah J. Martoccia, of Torrance, California, for petitioner.

Michael A. Carney, General Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent.  With him on the brief were B. Chad Bungard, General Counsel, and Rosa M. Koppel, Deputy General Counsel.  Of counsel was Thomas N. Auble.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3176

JACENTA J. GRIFFIN,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

Petition for review of the Merit Systems Protection Board in SF0731030528-I-3.

_____

DECIDED: February 4, 2008

_____

Before BRYSON, CLEVENGER, and LINN, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Jacenta J. Griffin petitions for review of a decision of the Merit Systems Protection Board dismissing her petition for review of an order accepting a settlement agreement as untimely and denying her related petition for enforcement of the settlement agreement. We <u>affirm</u>.

BACKGROUND

In June 2003, the Office of Personnel Management ("OPM") made a negative suitability determination with regard to Ms. Griffin and barred her from competition for or appointment to any position in the competitive federal service until March 27, 2005. Ms. Griffin appealed the negative determination to the Merit Systems Protection Board. While the appeal was pending, the parties reached a settlement. As part of the settlement, Ms. Griffin withdrew her appeal with prejudice, while OPM agreed to reduce the period of Ms. Griffin's debarment so that it would end on September 27, 2004. OPM also agreed that the reasons specified in its decision letter would "not be used as a basis for any future OPM suitability action unless evidence of conduct similar to the conduct described in the Decision Letter is disclosed in any future suitability investigation." The settlement was entered into the Board's record for enforcement purposes.

Ms. Griffin subsequently applied for but was denied a position as a correctional officer with the federal Bureau of Prisons. Alleging that she was denied the position because of "issues from this case," she filed a petition with the Board seeking enforcement of the settlement agreement. OPM agued, inter alia, that even if the Bureau of Prisons had made an adverse suitability determination with respect to Ms. Griffin, she would have no remedy under the settlement agreement, because the settlement agreement did not cover suitability determinations by agencies other than OPM. Ms. Griffin responded that she would not have agreed to the settlement agreement if she had known that it would not prevent other agencies from considering

the circumstances underlying her OPM unsuitability determination when evaluating her applications for employment.

The administrative judge who was assigned to the enforcement action found that at the time that the settlement agreement was negotiated, Ms. Griffin and her attorney had sought to revise the draft agreement in two ways. First, they sought to add language that would nullify any effects of the negative suitability determination on Ms. Griffin after the debarment period ended. The language that Ms. Griffin proposed provided in part that in connection with any future applications for federal employment, "no issues present in this case can be brought forth." Second, they sought to add language that would make the agreement applicable to suitability determinations made by other federal agencies in addition to OPM. OPM's representative, however, declined to accept either of those proposed changes, and the proposed changes were therefore not added to the draft agreement. Ms. Griffin accepted the settlement agreement even without the additions she and her attorney had proposed.

Based on those facts, the administrative judge found that it was clear Ms. Griffin and her attorney were aware that federal agencies other than OPM may make suitability determinations. The administrative judge concluded that the mere fact that OPM had refused to agree to the changes that Ms. Griffin and her lawyer proposed did not suggest that the agreement was tainted by fraud or mutual mistake.

The administrative judge found that Ms. Griffin had not shown that any other federal agency had made a negative suitability determination about her, but that even if she had, such an action would not constitute a breach of the settlement agreement. The administrative judge further found that Ms. Griffin had failed to show that any

federal agency had failed to employ her because of the negative suitability determination made by OPM. The administrative judge found that any such conduct would not constitute a breach of the agreement in any event, since OPM was not prohibited from informing other agencies about the terms of its own previous unsuitability determination. Accordingly, the administrative judge ruled that Ms. Griffin had failed to prove a breach of the settlement agreement.

To the extent that Ms. Griffin's petition was viewed as alleging that the settlement agreement was invalid from the outset, the administrative judge treated the petition for enforcement as a petition for review by the full Board and therefore forwarded the case to the full Board. The petition for review was given the effective date of the petition for enforcement filed by Ms. Griffin, May 4, 2006.

Because the initial decision that ratified the settlement agreement between Ms. Griffin and OPM became final on August 11, 2004, the effective filing date for the petition for review rendered the petition approximately 20 months late. The Board therefore requested that the parties file supplemental submissions addressing the timeliness issue, including any explanation as to why the untimeliness of the petition should be excused. The Board provided Ms. Griffin with forms to help her in doing so. Ms. Griffin, however, did not respond with any reason why the delay should be excused. The Board found no good cause for the 20-month delay and denied her petition as untimely filed.

In this court, Ms. Griffin filed her initial brief pro se, but later retained counsel who filed a reply brief on her behalf. The reply brief fleshes out some of Ms. Griffin's arguments in more detail than her initial brief, and it raises certain new issues. Because

Ms. Griffin was originally proceeding pro se, we have elected to entertain all the arguments made in Ms. Griffin's reply brief as if they had been timely raised in her initial brief.

DISCUSSION

Under 5 C.F.R. § 1201.114(f), an untimely petition for review "must be accompanied by a motion that shows good cause for the untimely filing, unless the Board has specifically granted an extension of time." To establish good cause for a filing delay, an appellant must show that "diligence or ordinary prudence ha[s] been exercised." Phillips v. U.S. Postal Serv., 695 F.2d 1389, 1391 (Fed. Cir. 1982).

Ms. Griffin did not respond to the Board's request for a supplemental submission explaining the reason for the delay in filing the document that the Board treated as a petition for review. In her initial brief before this court, Ms. Griffin asserted that she had had difficulty finding an attorney to represent her in this case (although she is now represented by counsel). Ms. Griffin, however, did not make that argument before the Board, and it does not set forth a sufficient excuse in any event. The Board has consistently held that inability to find legal counsel does not excuse delay. See, e.g., Goldtooth v. Dep't of the Interior, 69 M.S.P.R. 662, 663-64 (1996), aff'd, 106 F.3d 427 (Fed. Cir. 1997) (table); Block v. Def. Logistics Agency, 40 M.S.P.R. 198, 199-200, aff'd, 889 F.2d 1099 (Fed. Cir. 1989) (table). In her reply brief in this court, Ms. Griffin has directly addressed the issue of delay for the first time. In that brief, she argues that she could not have known of her need to file a petition for review until the BOP refused to hire her in a letter dated April 28, 2006. She filed her constructive petition for review one week after that date.

Although the Board predicated its decision as to the constructive petition for review on untimeliness, the administrative judge addressed the merits of Ms. Griffin's underlying claim in the course of his opinion dealing with the enforcement petition. Therefore, the issue of the timeliness of the constructive petition for review is not critical, as the merits of her challenge to the validity of the settlement agreement are presented in the enforcement proceeding. Like the administrative judge, we address the merits of her challenge to the validity of the settlement agreement in the context of that proceeding, and we conclude that she has not shown that the agreement is invalid or that it was breached.

Ms. Griffin's argument regarding the validity of the settlement agreement is predicated on her claim that that she believed she would never have to reveal the information underlying OPM's suitability determination to any other federal agency to which she applied for employment. She contends that this court should reform the settlement agreement to add a paragraph stating that she does "not need to disclose any information contained in the Decision Letter and investigation summary, such as the fact that she had been terminated from previous employment, when applying for any subsequent federal agency positions." Ms. Griffin argues that that was the initial intention of the parties in forming the settlement agreement and that the contract therefore should be reformed based on the doctrine of mutual mistake.

The administrative judge found that Ms. Griffin and the attorney who represented her at the time the settlement agreement was drafted could not have believed that the settlement agreement was as broad as she now contends. As noted above, Ms. Griffin and her attorney had asked for modifications of the settlement agreement that would

have prohibited reference to any of the "issues present in [the suitability] case," and would have prohibited any other federal agency from making a suitability determination based on the information in OPM's decision letter. OPM refused to add that language to the agreement, yet Ms. Griffin accepted the settlement agreement nonetheless. In light of those circumstances, the administrative judge found that Ms. Griffin must have understood that nothing in the settlement agreement would bar other federal agencies from having access to the information about her termination. Moreover, as the administrative judge explained, the settlement agreement bound only OPM; it did not bar other agencies from making adverse suitability determinations or otherwise deciding, for whatever reasons, not to hire her.

The administrative judge's findings are supported by substantial evidence, and in light of those findings, we cannot conclude that the contract should be reformed based on mutual mistake. The reformation that Ms. Griffin seeks would effectively amend the settlement agreement to include the very provisions that Ms. Griffin and her lawyer proposed but that OPM declined to accept. Under these circumstances, the administrative judge justifiably concluded that Ms. Griffin could not have believed that the agreement provided her the benefits that she now asserts she thought it did. Because the settlement agreement did not bar OPM from disclosing the circumstances underlying its prior unsuitability determination to other agencies and did not bar other federal agencies from making their own suitability determinations, the administrative judge properly denied the petition for enforcement.

Ms. Griffin further asserts that as a matter of law the settlement agreement applies not only to OPM but to all other federal agencies as well. She cites 5 C.F.R.

§ 731.203(b), which states that "[a]n applicant's eligibility may be cancelled, an applicant may be denied employment, or an appointee may be removed when OPM or an agency exercising delegated authority under this part finds that the applicant or appointee is unsuitable for the reasons cited in [section] 731.202 . . . ." Ms. Griffin contends that she "would have no way of knowing that OPM did not intend to exercise its authority to make suitability determinations with respect to her for all federal positions." This argument fails because, as the administrative judge noted, the background of the parties' negotiations over the settlement agreement makes clear that Ms. Griffin and her attorney were aware of the narrow scope of the settlement agreement. In the course of negotiations, the parties specifically adverted to the fact that other federal agencies conduct suitability determinations, and Ms. Griffin's acceptance of the agreement notwithstanding OPM's refusal to agree to bind other federal agencies undercuts her claim that she had "no way of knowing" that OPM would not make all suitability determinations "with respect to her for all federal positions."

In any event, it is not clear that the BOP made a suitability determination. After Ms. Griffin had passed the initial screening process, her application was forwarded to the warden for consideration. She was then denied the position. Whether the warden decided not to hire her because of information regarding her prior unsuitability determination or for some other reason is not revealed by the record. But in any event, there is nothing in the settlement agreement or in the regulations governing suitability determinations that prevented the warden from making a decision not to hire her.

For the foregoing reasons, we uphold the Board's decision.